**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

OKECHI EZE KWEM,

        Petitioner,

    v.

MARKWAYNE MULLIN, ET AL.,

        Respondents.

Case No. 5:26-cv-02800-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

**I.**

**INTRODUCTION**

On May 23, 2026, Petitioner Okechi Eze Kwem ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2.)  On May 26, 2026, Petitioner filed a Supplement to the Petition (the "Supplement").  (Dkt. 6.)  On May 29, 2026, Petitioner filed a Supplemental Notice of Material Change (the "Supplemental Notice").  (Dkt. 8.)  On June 1, 2026, Respondents Markwayne Mullin, Secretary of U.S. Department of Homeland Security ("DHS"), Rodney S. Scott, Commissioner

of U.S. Customs and Border Protection ("CBP"), Jaime Rios, Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement ("ICE"), Eddy Wang, Special Agent in Charge for Los Angeles, Homeland Security Investigations ("HSI"), ICE, and Warden of Desert View Facility (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 10.) On June 2, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 11.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

### FACTUAL BACKGROUND

Petitioner is a native and citizen of Nigeria. (Dkt. 10-1 at 1.) Petitioner entered the United States at Chicago O'Hare Airport in Illinois on August 13, 2001 with a F-1 Student Visa. (Id.) On January 23, 2006, Petitioner filed an I-589 Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS"). (Id.) On March 3, 2006, DHS served Petitioner with a Notice to Appear Form I-862 charging Petitioner under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). (Id.) On or about September 4, 2009, an Immigration Judge in Los Angeles denied Petitioner's application for asylum, ordered Petitioner removed to Nigeria, and granted Petitioner's application for withholding of removal to Nigeria. (Id.)

Following the Immigration Judge's grant of withholding of removal to Nigeria, Petitioner was permitted to live opening in the community for approximately sixteen years. (Dkt. 1 at 13.) Throughout that period, Petitioner continuously renewed employment authorization, maintained lawful employment, paid taxes beginning in approximately 2009, updated his address information with

immigration authorities, and remained fully available to immigration authorities. (Id. at 14.)  Although Petitioner was subject to routine reporting requirements or periodic check-ins, he nevertheless remained under continuing obligations imposed by the immigration laws.  (Id.)  Petitioner was required to notify immigration authorities of changes in address so as to preserve the Government's ability to execute the removal order should circumstances permit removal in the future.  (Id.)

During this period, Petitioner established ties to the community by continuously maintaining employment and working multiple jobs, including approximately eleven years with his principal employer.  (Id.)  Petitioner also maintained employment authorization throughout this period.  (Id.)  Petitioner has served as a full-time minister within the Jehovah's Witness faith since approximately 2011 and regularly attends Kingdom Hall services.  (Id.)  Petitioner also participated in numerous organizations and community groups including Los Angeles Road Runners, where he participated for approximately three years and assisted in training runners, Keep Running Santa Ana, Social Hour Run Club, Iron Coast Fitness, and Planet Fitness.  (Id. at 15.)  Petitioner has resided at his present address since approximately 2022 and has known his present landlord since approximately 2013.  (Id.)

Despite this longstanding history of openness and compliance, immigration authorities did not contact Petitioner for years until correspondence was mailed in approximately April 2026 directing him to appear.  (Id.)  Petitioner received correspondence dated approximately April 27, 2026.  (Id.)  The mailing envelope reflected a postmark date of approximately April 24, 2026.  (Id.)  On May 14, 2026, Petitioner reported to ERO in Santa Ana as instructed on his reporting requirements. (Dkt. 10-1 at 1.)  At that time, ICE officers took Petitioner into their custody to process him for third-country removal.  (Id.)  Petitioner did not receive any advance notice that detention would occur. (Dkt. 1 at 15.)  Petitioner was subsequently issued a Warrant of Removal/Deportation, Form I-2-5, a Warning to Alien Ordered

Removed or Deported, Form I-294, and Form I-200 Warrant of Arrest.  (Dkt. 10-1 at 2.)  Immigration authorities have not identified any danger determination, flight risk determination, supervision violation, or any materially changed circumstance justifying detention after approximately sixteen years of liberty.  (Dkt. 1 at 15.)  Immigration authorities also have not identified any intervening misconduct, absconding, violation, or individualized basis explaining why detention suddenly became necessary after approximately sixteen years during which immigration authorities repeatedly declined to exercise detention authority.  (Id. at 16.)

On May 25, 2026, Petitioner filed a Motion to Reopen Removal Proceedings Based on Material and Previously Unavailable Evidence (the "Motion to Reopen Removal Proceedings") in the Immigration Court in Los Angeles.  (Dkt. 6 at 8-58.)  Also on May 25, 2026, Petitioner filed a Motion for Stay of Removal in the Immigration Court in Los Angeles.  (Id. at 60-68.)  On May 29, 2026, the Immigration Court granted Petitioner's Motion to Reopen Removal Proceedings.  (Dkt. 8 at 2.)  As a consequence of that ruling, the prior removal order has been vacated, and removal proceedings have been reopened.  (Id.)  The matter has been transferred to the Adelanto Immigration Court for further proceedings on the detained docket.  (Id.)  Accordingly, Petitioner is no longer subject to a presently operative final order of removal.  (Id.)

### III.

### SUMMARY OF PETITIONER'S CLAIMS

Petitioner contends that his re-detention after approximately sixteen years of liberty without constitutionally adequate process violated the Fifth Amendment. (Dkt. 1 at 18-28.)  Petitioner further contends that his continued detention after a long-standing grant of withholding of removal violates statutory and constitutional limitations.  (Id. at 28-31.)  Petitioner seeks immediate release from custody and an order enjoying Respondents from re-detaining Petitioner absent advanced written

4

notice, disclosure of asserted grounds, a showing of materially changed circumstances, individualized findings concerning danger or flight risk, meaningful review before a neutral adjudicator, and constitutionally adequate procedures before revocation of liberty.  (Id. at 36.)  Petitioner further seeks an order that any future detention determination require Respondents to establish, by clear and convincing evidence, that detention rather than less restrictive alternatives is necessary.  (Id.)  In the alternative, Petitioner seeks an individualized bond hearing within seven days at which Respondents bear the burden of proving danger or flight risk by clear and convincing evidence.  (Id.)  Petitioner further seeks an order enjoining Respondents from removing Petitioner while reopening proceedings and the request for stay of removal remain pending.  (Id. at 37.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."

Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful

description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States back in 2001 and has been permitted to remain out of custody until May 14, 2026. (Dkt. 10-1 at 1-2; Dkt. 1 at 13-16.) It is further undisputed that Petitioner has built a life in this country with deep ties to the community by continuously renewing employment authorization, maintaining lawful employment, paying taxes, serving as a full-time minister within his faith, regularly attending religious services, and participating in numerous organizations and community groups. (Dkt. 1 at 14-15.) Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving here in 2001. See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").

7

This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that Petitioner did not receive any advance notice that he was going to be detained at the May 14, 2026 check-in with ERO. (Dkt. 1 at 15.) Instead, Petitioner reported to ERO as requested and was taken into custody. (Dkt. 10-1 at 1.) Therefore, the Court concludes that Petitioner's detention on May 14, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights.[1] See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents contend that Petitioner's detention on May 14, 2026 was authorized by 8 U.S.C. § 1231(a), which provides for a 90-day removal period during which detention is mandatory. (Dkt. 10 at 3.) Respondents further contend that Petitioner is still within the 90-day removal period based on his detention on May 14, 2026. (Id.) However, the 90-day removal period begins on the latest of the following dates: "(i) The date the order of removal becomes administratively

---

[1] The Court acknowledges that Petitioner was issued a Warrant of Removal/Deportation, Form I-2-5, a Warning to Alien Ordered Removed or Deported, Form I-294, and Form I-200 Warrant of Arrest. (Dkt. 10-1 at 2.) However, the Declaration of Deportation Officer Evelny J. Lajuj does not say when this occurred. (Id.) Based on the overall structure of the declaration, it appears that this occurred after Petitioner was detained on May 14, 2026, but it is not clear from the declaration whether this occurred immediately after Petitioner was detained or days or weeks later. (Id.)

final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[; or] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Here, Petitioner's order of removal became final back in 2009 and Petitioner was not previously detained or confined. (Dkt. 10-1 at 1-2.) Therefore, the 90-day removal period began back in 2009 and expired long ago. See 8 U.S.C. § 1231(a)(1)(B). Thus, the Court concludes that Petitioner is not and was not subject to mandatory detention pursuant to 8 U.S.C. § 1231(a).

Regardless, the entire basis of Petitioner's detention under 8 U.S.C. § 1231(a) is no longer applicable. Indeed, Respondents contend that Petitioner's detention is justified to effectuate an administratively final order of removal. (Dkt. 10 at 2; see also id. at 5 ("Respondents seek nothing more than to effectuate Petitioner's administratively final order of removal.").) However, on May 29, 2026, the Immigration Court granted Petitioner's Motion to Reopen Removal Proceedings. (Dkt. 8 at 2.) As a consequence of that ruling, the prior removal order has been vacated, and removal proceedings have been reopened. (Id.) The matter has been transferred to the Adelanto Immigration Court for further proceedings on the detained docket. (Id.) Accordingly, Petitioner is no longer subject to a presently operative final order of removal. (Id.) Respondents fail to address this material legal development in their Answer. (Dkt. 10.) Thus, the Court concludes that even if Petitioner's initial detention on May 14, 2026 was justified to effectuate what was then an administratively final order of removal, Petitioner's continued detention was no longer justified as of May 29, 2026, when the Immigration Court reopened Petitioner's removal proceedings.

In light of the violation of Petitioner's procedural due process rights related to his detention on May 14, 2026, and the fact that the prior removal order has been vacated, the Court further concludes that "Petitioner's release is necessary to return

him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and

10

convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal.  See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a [third country], they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).").  Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the INA, 8 U.S.C. § 1231(b), and the Due Process Clause.  See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings.").  To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country.  See Aden, 409 F. Supp. 3d at 1019.  Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The Government must "make a determination regarding a noncitizen's claim of fear before deporting him."  Aden, 409 F. Supp. 3d at 1010; 8

11

U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. <u>See, e.g.</u>, <u>Nguyen v. Scott</u>, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government— regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); <u>accord</u> <u>A.A.M. v. Andrews</u>, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); <u>Gomez v. Mattos</u>, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); <u>M.T.M. v. Andrews</u>, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025).

## VI.

### CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Okechi Eze Kwem (A# 099-400-437) from custody (subject only to conditions of release that existed prior to Petitioner's May 14, 2026 detention, if any). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.

The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall not attempt to remove Petitioner to any country other than Nigeria without first providing written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3).  Respondents shall file a notice of compliance no later than **three days after entry of Judgment**.

IT IS SO ORDERED.


DATED:   June 3, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE